IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY** | : : : | **CIVIL ACTION** |
| | : | **No. 04-4785** |
| **v.** | : : | |
| **CSX TRANSPORTATION, INC., ET AL.** | : | |

     **AND NOW**, this 21st day of December, 2005, after a nonjury trial at which it had the opportunity to observe the demeanor of the witnesses and to evaluate their credibility and testimony, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

     1.    Southeastern Pennsylvania Transportation Authority ("SEPTA") operates a public transportation system which provides rail, bus, trolley and related transportation services for commuters in the City of Philadelphia and the surrounding Pennsylvania counties. *Stipulation of Undisputed Facts* ¶ 1 (Document No. 56) ("*Stipulation*").

     2.    CSX Transportation, Inc. ("CSX") operates a rail network in the United States, providing freight transportation over a network of rail tracks in many states, including the Commonwealth of Pennsylvania and the City of Philadelphia. *Stipulation* ¶ 2.

     3.    AT&T Corporation ("AT&T"), AboveNet, Inc., ("AboveNet"), and Qwest Communications International, Inc. ("Qwest") (collectively "Fiber Optic Cable Companies"), are telecommunication companies, which, among other things, provide fiber optic cable networks throughout the United States, including Philadelphia. *Stipulation* ¶ 3.

     4.    The City Branch is a railroad right-of-way which runs, in part, below street

grade from 26th Street to 30th Street in the City of Philadelphia ("City Branch").  *Stipulation* ¶ 4.

5. The City Branch consists of two railroad rights-of-way that are separated in tunnels by concrete columns and run parallel to each other from the tunnel portal at 27th Street to a point where they join at 30th Street.

6. The northerly right-of-way was originally granted to the Pennsylvania & Reading Railroad and passed to Conrail and then, through a quitclaim deed dated June 30, 1995, to SEPTA.  *Stipulation* ¶ 7.

7. The southerly right-of-way was originally granted to the Schuylkill River East Side Railroad Company ("SRESRC") and later operated by the Baltimore and Ohio Railroad Company which transferred it to CSX.  *Stipulation* ¶ 8.

8. There currently exists only one track in the relevant portion of the City Branch and that track is owned by CSX.  *Stipulation* ¶ 12.

9. Since it purchased the northerly right-of-way in 1995, SEPTA has not installed tracks nor operated any trains on the property.  *Stipulation* ¶ 13.

10. Attached to the quitclaim deed transferring the right-of-way from Conrail to SEPTA, was a railroad valuation map, dated April 24, 1995, prepared by Conrail.  Trial Tr. Oct. 3, 2005 ("Tr. I") at 17; Ex. P-75.

11. A railroad valuation map, which does not contain a metes and bounds description, is prepared by a railroad to record the assets and property, including property improvements, owned or controlled by the railroad.

12. The City of Philadelphia initially refused to record the quitclaim deed because it lacked a sufficient description of the property being conveyed.  Tr. I at 18.

13. SEPTA commissioned and obtained a survey of the right-of-way conveyed by Conrail to SEPTA which was incorporated in the deed for recording purposes.  Tr. I at 18-19.

14. Andrew C. Putnam, the plaintiff's expert, then an employee of Hunt Engineering Company, performed field work as part of a 1999 survey of the right of way from 30th Street to 27th Street and 500 feet into the tunnel which is 20 feet below street grade.  Tr. I at 35, 41-42, 45-46.

15. Putnam, as project manager, resurveyed the area in 2003 in connection with this dispute over the City Branch.  Tr. I at 41.

16. Because there were no monuments for use in the first survey, Putnam used the survey marks set by the City of Philadelphia's surveyors using City plans.  Tr. I at 45-46, 52-53.

17. Putnam reviewed and relied upon, together with all the other information he had assembled, railroad valuation maps, track agreements, physical features on the land, and official street plans.  Tr. I at 37-40.

18. Putnam conducted his survey according to the protocol set forth in *Boundary Retracement Principles and Procedures for Pennsylvania* by Knud Everett Hermansen, a learned treatise accepted by both parties.  Tr. I at 38-40; 116-18 (Putnam); Trial Tr. Oct. 6, 2005 ("Tr. II") at 3-4 (Rife).

20. By Ordinance approved July 3, 1885, the City of Philadelphia authorized the Schuylkill River East Side Railroad Company ("SRESRC") to construct a railroad upon land along Pennsylvania Avenue as shown on the map incorporated in the Ordinance.  Ex. P-65.

21. The July 1885 Ordinance does not state any specific measurements, easements, rights-of-way or distances. Tr. I at 55; Ex. P-65.

22. By Ordinance approved November 19, 1886, the City of Philadelphia authorized the Department of Surveyors to revise the original July 1885 plan in order to reduce the width of Pennsylvania Avenue between 25th Street and Fairmount Avenue to its original width due to the "manner in which the railroad . . . is being constructed along Pennsylvania Avenue." Ex. P-65.

23. The City Plan of Revision of Curbs and Grades of April 7, 1898 is the first plan where the railroad tracks are shown as below grade, in the present-day "subway." Tr. I at 61; Ex. P-67.

24. The October 27, 1916 valuation map, jointly prepared by the SRESRRC and the Philadelphia and Reading Railway Company, established the street line along Pennsylvania Avenue and enabled Putnam to set the center line of the right-of-way. Tr. 1 at 64-66; Ex. P-68.

25. The location of the center line of the right-of-way has never changed. Tr. I at 125.

26. The boundary of the SRESRRC has shifted one foot off the center line as a result of the tracks rights agreement dated November 6, 1885, subsequent to the establishment of the center line. Tr. I at 126-27.

27. Putnam used the stone masonry wall on the park side to confirm his survey. Tr. I at 73.

28. The stone masonry wall on the Fairmount Park side first appeared on the October 27, 1916 valuation map jointly prepared by the SRESRRC and the Philadelphia

and Reading Railway Company.  Ex. P-68.

29. The CSX right-of-way is 25 feet from the southerly side of Pennsylvania Avenue.  Tr. I at 65-67; 93-94.

30. The railroad valuation maps reference the July 3, 1885 Ordinance and the November 6, 1885 track rights agreement between the original owners of the right of ways, The Philadelphia and Reading Railroad Company and the SRESRC, which established where the tracks would connect and where the grades of the tracks would coincide.  Tr. I at 59-60.

31. The November 6, 1885 agreement incorporates a map that was attached but is now missing.  Ex. P-66; Tr. I at 119.

32. The railroad valuation maps were consistent in defining the location of both rights-of-way.

33. The joint railroad valuation map dated October 27, 1916 shows the southerly boundary of the SRESRRC right-of-way as five feet beyond the masonry wall on the Fairmount Park side, and the total width of the SRESRRC right-of-way is shown at a scaled distance of 25 feet.  Tr. I at 63-67; Ex. P-68.

34. The two railroad valuation maps dated June 30, 1917, which were prepared separately and independently by the respective owners of the rights-of-way, also show a scaled distance of 25 feet between the boundary of the SRESRRC right-of-way on the park side of the masonry wall to the boundary between the rights of way.  Tr. I at 68-73; Ex. P-69 and P-70.

35. The southerly Pennsylvania Avenue street line on the Putnam survey is consistent with the valuation maps.

36. Putnam determined that the width of the CSX right-of-way is 25 feet by consulting, among other documents, the 1885 city plan, which establishes the center line of the SRESRR right-of-way at 17 feet, and the railroad valuation maps, which confirmed that the width of the right-of-way from the southerly boundary line n the Fairmount Park side to the right-of-way boundary is 25 feet.  Tr. I at 93.

37. The center line of the right-of-way and the street line have not changed.

38. The Hunt Engineering certified survey of the City Branch right-of-way from 26th Street to 30th Street, dated June 23, 2004, correctly represents the locations of the rights-of-way, the track and the fiber optic cable lines within the City Branch.

39. In 1989, under an agreement with CSX, AT&T placed fiber optic cables in the City Branch.  *Stipulation* ¶ 9.

40. In 1998, pursuant to separate agreements with CSX, AboveNet and Qwest installed fiber optic cables along the City Branch.  *Stipulation* ¶ 10.

41. Pursuant to the terms of their individual occupancy agreements with CSX, the Fiber Optic Cable Companies made or owed payments to CSX for the fiber optic cables placed by them within the City Branch.  *Stipulation* ¶ 11.

42. The fiber optic cables of defendants AT&T, Abovenet and Qwest are currently in SEPTA's portion of the right-of-way.

43. Twenty-five lineal feet of CSX track encroaches upon the SEPTA right-of-way near the 30th Street terminus of the City Branch.  Tr. I at 130-32, 146.

## CONCLUSIONS OF LAW

1. In this diversity action, Pennsylvania substantive law applies.

2. The finder of fact may weigh the credibility of one expert over another and

credit one expert report over another, and may accept all, some or none of an expert's opinions. *United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 185-86 (3d Cir. 2004); *In re Cendant Corp. Litigation*, 264 F.3d 201, 253-54 (3d Cir. 2001).

3. SEPTA has sustained its burden of proving the boundaries of the parties' respective rights-of-way in the City Branch.

4. The Fiber Optic Cable Companies are liable to SEPTA for trespass on SEPTA's right-of-way.

5. CSX is liable to SEPTA for trespass on SEPTA's right-of-way.

6. As a Commonwealth agency, SEPTA is not subject to the statute of limitations with respect to its trespass claim.

7. There has been no legal or *de facto* taking of SEPTA's right-of-way.

_____/s/_____
TIMOTHY J. SAVAGE, J.